# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | |
|---|---|
| **SS & T, LLC.**<br>4400 Massachusetts Ave., N.W.,<br>Washington, DC 20016<br><br>   Plaintiff,<br><br>   v.<br><br>**AMERICAN UNIVERSITY,**<br>4400 Massachusetts Ave., N.W.,<br>Washington, D.C. 20016-8033<br><br>   Serve Registered Agent:<br><br>   DOUGLAS KUDRAVETZ<br>   4400 Massachusetts Ave., N.W.,<br>   Suite 1000<br>   Washington, D.C. 20016<br><br>   Defendant. | Civil Action No.--<br><br><br><br>**Jury Requested** |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**COMES NOW** Plaintiff, SS & T LLC., hereinafter ("Plaintiff"), by and through its undersigned counsel, and sues American University ("AU" or "Defendant"), and for its cause of action states the following:

### INTRODUCTION

1. This is an action authorized and instituted pursuant to Rev. Stat. § 1977, 42 U.S.C. § 1981, as amended, for the Defendant's unlawful race discrimination against the Plaintiff.

2. Since approximately 2003, Plaintiff and Defendant have been parties to several

contractual agreements relating to the Plaintiff's leasing and operation of commercial property owned by Defendant.

3. Since approximately 2015, Defendant has been engaging in a pattern of behavior designed to limit Plaintiff's enjoyment of the benefits and privileges of its contracts with Defendant as well.

4. Since approximately 2016, Defendant has unlawfully interfered with Plaintiff's ability to make contracts by refusing to allow Plaintiff to renew its contractual relationship with Defendant on account of the race of Plaintiff's employees and representatives.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this Complaint pursuant to 42 U.S.C. § 1983. Venue is appropriate and based on the fact that a substantial part of the actions complained herein are the result of actions Defendant, a private entity that operates within the District of Columbia.

## PARTIES

6. Plaintiff, SS & T LLC, is a limited liability company doing business in the District of Columbia in the form of the operation of several restaurants. Plaintiff is currently headquartered at 4400 Massachusetts Ave., N.W., Washington, DC 20016.

7. The Defendant, AU, is a private university located in the District of Columbia.

## FACTS

8. Plaintiff is a limited liability company that, amongst other things, operates restaurants on AUs campus.

9. In 2003, Plaintiff and Defendant entered into their first contractual relationships

when Plaintiff began leasing two commercial spaces from Defendant for the purpose of operating two restaurants, the Megabytes Café and the American Café.

10. In or around April 2010, Plaintiff entered into an additional contract with Defendant to operate another restaurant, Asian Flavors, on premises owned by Defendant.

11. In or around June 2011, Plaintiff entered into a contract with Defendant to operate a restaurant space in Defendant's library which was ultimately named Mudbox.

12. The leases associated with Plaintiff's Mudbox, Megabytes Café, and American Café locations also conferred upon Plaintiff the option to renew the leases for an additional term, as long as the leases were not terminated and Plaintiff was not in default at the time of the expiration of the lease term.

13. During the entire period of all of the lease agreements between Plaintiff and Defendant, Defendant has always made its rent payments to Defendant on time in accordance with the lease agreements.

14. During the entire period of all of the lease agreements between Plaintiff and Defendant, Plaintiff has never defaulted on any of the lease agreements between Plaintiff and Defendant.

15. In its dealings with Defendant, Plaintiff company was represented by Mr. Tom Gera ("Mr. Gera").

16. Mr. Gera is an individual of Indian descent as are those members of his family who assist him in conducting Plaintiff's operations on Defendant's property pursuant to the leases described above.

**Defendant's Interference With Plaintiff's Contractual Rights**

17. When Plaintiff's lease agreements for its American Café and Megabytes Café locations were to be renewed, Defendant required a modification of the lease terms applicable to Plaintiff's leases on those locations.

18. Defendant required that Plaintiff accept an exclusive agreement to sell only Coca-Cola products in its premises. This requirement, by limiting some of the commercial offerings then available in Plaintiff's establishments, negatively impacted Plaintiff's ability to generate revenue and enjoy the benefits of its lease agreements with Defendant.

19. Other entities that also lease commercial property from Defendant which are not represented by persons of Indian descent were not similarly required to limit their commercial offerings.

20. Defendant operates the "Eagle Bucks" and "dining dollars" programs whereby it provides an electronic currency known as "Eagle Bucks" and "dining dollars" to Defendant's students which can be used to purchase foodstuffs from restaurants associated with the Defendant.

21. Acceptance of Eagle Bucks at Plaintiff's locations requires special machinery provided by AU.

22. During the term of Plaintiff's leases, Defendant revoked Plaintiff's ability to accept both Eagle Bucks and dining dollars at its restaurants, removing the special machinery necessary to accept these payment methods.

23. Defendant's revocation of Plaintiff's ability to accept Eagle Bucks negatively impacted Plaintiff's ability to sell its products to Plaintiff's target consumer, Defendant's

students, thereby interfering with Plaintiff's ability to enjoy the anticipated benefits of its lease agreements with Defendant.

24. Other entities that similarly lease commercial property from Defendant that are not represented by persons of Indian descent were allowed to continue accepting Eagle Bucks after Plaintiff was removed from the program.

25. Defendant exercised its control over the premises in which Plaintiff's leased property is located to bar Plaintiff from receiving deliveries of inventory through the access gate closest to Plaintiff's establishments. Defendant took this action without providing Plaintiff with an alternative location for the acceptance of deliveries in similar proximity to Plaintiff's leased premises.

26. This action and exercise of control by Defendant interfered with Plaintiff's operations of its establishments and its ability to gain the commercial benefits of its lease agreements with Defendant by increasing the difficulty and the costs associated with restocking Plaintiff's establishments.

27. On March 31, 2016, Defendant allowed Plaintiff's lease for its Mudbox location to expire, refusing to allow Plaintiff to exercise its option to renew the lease for an additional term.

28. Defendant's refusal to renew Plaintiff's lease for the Mudbox location occurred despite Plaintiff notifying Defendant of its desire to renew through its representative, Mr. Gera, and Plaintiff not being in default at the time of lease expiration.

29. Defendant alleged that Plaintiff failed to give proper notice under the lease agreement of the intent to renew, however, Plaintiff is not aware of Defendant enforcing the notice provision with respect to any other entity with similar lease agreements with Defendant.

30. Beginning in or around August 2015 and continuing to the present, Defendant has strenuously enforced the provisions of the lease agreement related to Plaintiff's Asian Flavors establishment in a manner inconsistent with its treatment of businesses with which it has contracts that are not represented by persons of Indian descent.

31. Specifically, Defendant has repeatedly accused Plaintiff of violating the lease provisions associated with its menu offerings, signage, and licensure, threatening legal action and potential termination of the lease agreement for these alleged minor technical violations.

32. These exercises of its rights under the contract by Defendant are designed to harass Plaintiff and its representatives until it gives up its contractual rights to lease property on Defendant's property.

33. This hyper-scrutiny that has been applied to Plaintiff's establishments has significantly interfered with Plaintiff's ability to operate its businesses.

34. On or about February 3, 2016, approximately four years before the lease is set to expire, AU notified Plaintiff that it would not be offering it a lease renewal for its Asian Flavors location and offered Plaintiff the opportunity to leave the space early without penalty in an attempt to induce Plaintiff to vacate the property several years early.

35. Other establishments which have similarly lengthy business relationships with Defendant relating to the leasing of commercial property and which are represented by individuals not of Indian descent have not been similarly denied the opportunity to renew their commercial leases or offered to terminate them four years prior to expiration.

36. In the Summer of 2016, Defendant further harassed Plaintiff by requiring Plaintiff to open his commercial spaces during the low business volume summer months when many students are not present on campus.

37. This requirement from Defendant that Plaintiff open his commercial locations during the Summer of 2016 was not placed upon other establishments not represented by persons of Indian descent.

38. In April 2018, an assessment of Plaintiff's Megabyte location was performed by a pest control service with a business relationship with Defendants as required by Defendants.

39. The examination of Plaintiff's Megabyte location by the pest control service brought to light structural defects in the underlying structure in which Plaintiff's Megabyte establishment is located which left the Megabyte location vulnerable to continued pest infestation. To prevent such infestation going forward, renovations of the commercial space were recommended.

40. In April 2018, Plaintiff's representatives requested that Defendant perform the suggested renovations during the summer of 2018 when the renovations would have the least impact on Plaintiff's business as there were fewer students on campus during the summer months.

41. Despite performing necessary renovations on commercial space leased to other entities not represented by persons of Indian descent, Defendant refused to perform the renovations recommended by the pest control contractor as requested by Defendant.

42. In December 2018, as a result of Defendant's failure to act upon Plaintiff's request, Plaintiff's Megabyte establishment experienced a pest infestation that was highly publicized and had a significant deleterious impact on Plaintiff's business.

43. As a result of this highly publicized pest infestation, Defendant chose to lock Plaintiff out of the Megabyte property that Plaintiff leases from Defendant.

44.     Plaintiff is not the only commercial property leased by Defendant that has suffered pest infestations that were known to Defendant, however, Defendant has not similarly locked out any lessee entity not represented by a person of Indian descent as it did Plaintiff.

**Injury To Plaintiff**

45.     As a result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, irreparable loss and injury, including but not limited to economic loss and the deprivation of its rights to make and enforce contractual agreements free from discriminatory interference.

46.     Through the actions of Defendant's employees, agents, and/or representatives described above, Defendant acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights, without Plaintiff in any way contributing thereto.

## COUNT ONE

**(VIOLATION OF 42 U.S.C. § 1981-RACE DISCRIMINATION)**

47.     Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs 1 to 46 above, as if fully set forth herein.

48.     42 U.S.C. § 1981 prohibits discrimination in the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship on the basis of race.

49.     Mr. Gera serves as the Plaintiff's representative in its business dealings with Defendant and is a member of a class protected under by virtue of his race 42 U.S.C. § 1981 (Indian).

50.     As an entity formed and doing business within the jurisdiction of the United States, Defendant must abide by 42 U.S.C. § 1981.

51. Entities that are parties to contracts with Defendant and who are represented by individuals who are not of Indian descent are treated more favorably than Plaintiff by: receiving extensions of their lease agreements; being allowed to sell a wider array of products than that allowed to Plaintiff without interference from Defendant, and being allowed to participate in Defendant's Eagle Bucks program whereas Plaintiff is not.

52. The terms of Plaintiff's leases have been enforced more strictly than the terms of the leases between Defendant and entities who were not represented by persons of Indian descent, even though those entities similarly engage in conduct that constitutes technical breaches of their lease agreements with Defendant.

53. The Defendant has refused to repair the establishment leased by the Plaintiff, despite its obligations to do so, causing irreparable damage both in terms of economic loss but also damage to Plaintiff's reputation in the community and ability to operate.

54. The foregoing actions by Defendant constitute discrimination on the basis of race which have infringed upon Plaintiff's right to enter into contractual agreements as well as Plaintiff's enjoyment of the benefits and privileges of its contractual relationships in violation of 42 U.S.C. § 1981.

55. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, SS & T LLC., respectfully prays that this Court grant it the following relief:

a.) Enter a declaratory judgment finding that the foregoing actions of Defendant violated 42

U.S.C. § 1981.

b.) Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.) Order the Defendant institute a policy and procedure to be implemented against discrimination;

d.) Award compensatory damages in excess of three Hundred Thousand Dollars ($300,000.00), which would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of Defendant alleged herein;

e.) Award reasonable attorney fees, costs, and expenses incurred for this action;

f.) Award equitable, declaratory, and injunctive relief;

g.) Award Plaintiff punitive damages; and

h.) Order such other relief as this Honorable Court deems just and proper.

**Equitable Relief**

a.) Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

b.) Plaintiff requests all equitable relief which can be afforded it under the law because the continued actions of the employees of Defendant responsible for the actions alleged herein, represents a clear and present danger to Plaintiff's interests which could result in further illegal actions on the party of Defendant, by and through its agents, servants, and employees.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues in this case so triable.

Dated: March 14, 2019

        Respectfully submitted,

/S/ Donna Williams Rucker
Donna Williams Rucker, Esq.
Deputy Managing Partner
Labor & Employment Law Practice Group

TULLY RINCKEY PLLC
815 Connecticut Avenue N.W., Suite 720
Washington, DC 20006
Phone: (202) 787-1900
Fax: (202) 640-2059
DRucker@fedattorney.com
DLewis@FedAttorney.com

**ATTORNEY FOR PLAINTIFF**