UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SS & T, LLC,

    Plaintiff,

        v.

AMERICAN UNIVERSITY,

    Defendant.

Civil Action No. 19-721 (JDB)

## MEMORANDUM OPINION

Plaintiff SS & T, LLC, a restaurant company, brings suit against defendant American University, alleging that the University discriminated against it on the basis of race in violation of 42 U.S.C. § 1981. SS & T claims that the University engaged in a pattern of behavior designed to limit the company's enjoyment of its lease agreements with the University and denied SS & T the opportunity to renew its lease agreements, all with the intent to discriminate against SS & T because it is owned by a person of Indian descent. American University moves to dismiss the complaint for failure to state a claim. For the reasons explained below, the Court will grant the University's motion to dismiss.

## BACKGROUND[1]

SS & T leased commercial properties from American University to operate a variety of restaurants throughout American University's campus. Am. Compl. for Damages & Equitable Relief ("Compl.") [ECF No. 13] ¶¶ 2, 7. Tom Gera, a person of color and of Indian descent, is the sole owner of SS & T and represented the company in its dealings with the University. Id. ¶¶ 11–15. Members of Gera's family, also of Indian descent, assist him in operating SS & T's

---

[1] At the motion to dismiss stage, the Court "treat[s] the complaint's factual allegations as true." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

1

restaurants. Id. ¶ 13. SS & T first leased properties from the University in 2003 to operate the Megabytes Café and the American Café. Id. ¶ 16. In 2010 and 2011, SS & T entered into additional leases with American University to operate two new restaurants, Asian Flavors and Mudbox. Id. ¶¶ 17–18. Not once did SS & T fail to pay rent on time or otherwise "default" on any of its lease agreements with the University. Id. ¶¶ 20–21.

However, SS & T claims that, since approximately 2015, American University "has been engaging in a pattern of behavior designed to limit [SS & T's] enjoyment of the benefits and privileges of its contracts with [the University]." Id. ¶ 3. For example, when the lease agreements for Megabytes Café and the American Café were up for renewal, American University required SS & T to agree to sell only Coca-Cola products on its premises, which "negatively impacted [SS & T's] ability to generate revenue and enjoy the benefits of its lease agreements." Id. ¶¶ 22–23. Furthermore, during those lease terms, American University revoked SS & T's ability to accept "Eagle Bucks," an electronic currency that university students can use to purchase food from restaurants associated with the University. Id. ¶¶ 27–29. SS & T claims that this negatively impacted the company's ability to sell products to students (its target consumers) and enjoy the anticipated benefits of its lease agreements. Id. ¶ 30. American University also required SS & T to keep its restaurants open during the low-business summer months and barred SS & T from receiving deliveries of inventory through the gate closest to the company's restaurants, increasing the difficulty and costs associated with restocking. Id. ¶¶ 34–35, 54.

SS & T alleges that American University intentionally engaged in this conduct to discriminate against and disadvantage the company because it is owned by a person of Indian descent. See id. ¶¶ 25–26, 32–33, 36–37. According to SS & T, "[o]ther entities that also lease commercial property from [American University] which are not owned by persons of Indian

descent" were not subject to the same conduct. See id. ¶¶ 24 (alleging other leaseholders not owned by persons of Indian descent were "not similarly required to limit their commercial offerings"); 31 ("were allowed to continue accepting Eagle Bucks"); 55 (were not required to "open [their] commercial locations during the Summer of 2016").

SS & T also claims that American University refused to renew the company's lease agreements and did so with the intent to discriminate on the basis of race. Id. ¶ 4. For example, with respect to the Mudbox establishment, American University refused to allow SS & T to exercise its right to renew the lease because SS & T had failed to give proper notice of its intent to renew consistent with the terms of the lease agreement. Id. ¶¶ 38–40. But SS & T is not aware of American University enforcing the contract's notice provision with respect to any other entity with a similar lease agreement. Id. ¶ 40. To the contrary, SS & T claims that other leaseholders, not owned by persons of Indian descent, were allowed to exercise the renewal option in their leases despite failing to provide a timely official notice of their intent to renew. Id. ¶ 41. SS & T claims that the University's refusal to renew the lease for Mudbox was intended "to discriminate against and limit [the University's] business relations with [SS & T] because it is an entity owned by persons of Indian descent." Id. ¶ 42.

American University also didn't allow SS & T to renew its lease for Asian Flavors. Id. ¶ 51. The University "strenuously enforced" provisions in the Asian Flavors lease agreement, accusing SS & T of violating minor provisions related to menu offerings, signage, and licensure, and threatening to sue or terminate the agreement based on these alleged technical violations. Id. ¶¶ 43–44. Then, four years before the lease for Asian Flavors was set to expire, American University notified SS & T that it would not be renewing the lease and offered the company the opportunity to leave the lease early without any penalties in an effort to induce SS & T to end its

business with the University.  Id. ¶ 51.  According to SS & T, other leaseholders with similar lengthy business relationships with the University, but that are not owned by a person of Indian descent, are not treated in this manner, and the University engaged in this conduct to discriminate against SS & T on the basis of race.  Id. ¶¶ 45–50, 52–53.

Finally, the relationship between SS & T and American University further deteriorated in 2018 when a pest control inspection of the Megabyte Café revealed defects in the underlying structure that left the space vulnerable to pest infestations.  Id. ¶¶ 57–58.  Pest control recommended renovations to the space, and SS & T requested that the University make those renovations during the summer of 2018 to minimize the impact on its business.  Id. ¶¶ 59–60.  But the University failed to perform the necessary renovations as requested, and as a result, there was a highly publicized pest infestation at the Megabyte Café in December 2018 that had a significant impact on SS & T's business.  Id. ¶¶ 61–62.  In response to the infestation, American University locked SS & T out of leased property.  Id. ¶ 63.  SS & T claims that the University did not respond to other entities in need of renovations or with pest infestations in a similar manner because those entities were not owned by persons of Indian descent; according to SS & T, the University intended to discriminate on the basis of race.  Id. ¶¶ 64–65.

SS & T now seeks damages and equitable relief against American University for race discrimination under 42 U.S.C. § 1981.  Compl. at 11–13.  The University has moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  See Mot. to Dismiss Am. Comp. [ECF No. 16].  That motion is now fully briefed and ripe for resolution.[2]

---

[2] SS & T has filed a separate lawsuit against American University in D.C. Superior Court asserting contract and tort claims arising out of the same facts as this case.  See D.C. Superior Court Compl., Ex. A to Mot. to Dismiss Am. Compl. [ECF No. 16-2].  There is, however, no bar to the prosecution of parallel actions in federal and state courts.  See Handy v. Shaw, Bransford, Veilleux & Roth, 325 F.3d 346, 349–53 (D.C. Cir. 2003); see also Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (noting "as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction").

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although "detailed factual allegations" are not necessary, plaintiffs must provide "more than labels and conclusions"—a "formulaic recitation of a cause of action's elements will not do." Id. at 555. The factual allegations "must be enough to raise a right to relief above the speculative level." Id. Plaintiffs must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and there must be "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

At this stage, the Court "treat[s] the complaint's factual allegations as true" and grants plaintiffs "the benefit of all inferences that can be derived from the facts alleged." Sparrow, 216 F.3d at 1113. "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor must the court accept "a legal conclusion couched as a factual allegation," id., or "naked assertions devoid of further factual enhancement," Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

**ANALYSIS**

SS & T's sole claim is that American University discriminated against it on the basis of race in violation of 42 U.S.C. § 1981.[3] Compl. ¶¶ 68–78. "Section 1981 protects the right 'to

---

[3] SS & T's complaint also cites 42 U.S.C. § 1983 as the basis for jurisdiction, see Compl. ¶ 5, but the complaint lists only one count—the § 1981 claim—and never alleges that SS & T's rights were violated "by a person acting under color of state law," as is necessary to state a claim for relief under § 1983, West v. Atkins, 487 U.S. 42, 48 (1988). Accordingly, the Court concludes that the complaint states no § 1983 claim and that SS & T likely intended

5

make and enforce contracts' free from racial discrimination." Nanko Shipping, USA v. Alcoa, Inc., 850 F.3d 461, 467 (D.C. Cir. 2017) (quoting 42 U.S.C. § 1981(a)). "To establish a claim under § 1981, plaintiffs must show that (1) they are members of a racial minority group; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination pertained to one of the activities enumerated in the statute." Dickerson v. D.C., 806 F. Supp. 2d 116, 119 (D.D.C. 2011). "[T]he pleading standards under section 1981 track those in the familiar McDonnell Douglas rubric for alleging a prima facie case of purposeful employment discrimination." Nanko, 850 F.3d at 467. "Although the framework for evaluating Section 1981 claims resembles that for Title VII claims, discrimination under Section 1981 must be intentional and there are no administrative remedies to exhaust." Haynes, 924 F.3d at 529 (internal citations omitted).

At the motion to dismiss stage in a § 1981 case, "[t]he plaintiff's initial burden 'is not onerous.'" Nanko, 850 F.3d at 467 (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989)). A plaintiff will raise the "right to relief above the speculative level" by "alleging those basic elements of a prima facie case of intentional discrimination." Nanko, 850 F.3d at 467 (concluding that plaintiff that sufficiently alleged that defendant treated company owned by person of Guinean descent "less favorably than similarly situated white-owned companies" established intent to discriminate). However, "allegations of discrimination" in a complaint may be "so threadbare . . . that they do not meet even that low burden." L. Xia v. Tillerson, 865 F.3d 643, 659 (D.C. Cir. 2017).

American University moves to dismiss SS & T's complaint for failure to state a claim, arguing that the bare allegations contained in the complaint do not sufficiently allege that the

---

to refer to its § 1981 claim as the basis for jurisdiction, over which this Court has federal question jurisdiction under 28 U.S.C. § 1331. See Haynes v. D.C. Water & Sewer Auth., 924 F.3d 519, 523 (D.C. Cir. 2019).

University intended to discriminate against SS & T on the basis of race. See Mem. of Law in Supp. of Def.'s Mot. to Dismiss Am. Compl. [ECF No. 16-1] at 7–10. The Court agrees: SS & T's allegations fall short.

"In order to pursue a cause of action under § 1981, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that his race was the reason for defendant's actions." Bray v. RHT, Inc., 748 F. Supp. 3, 5 (D.D.C. 1990), aff'd sub nom. Bray v. Hebble, 976 F.2d 45 (D.C. Cir. 1992) (internal citation omitted). SS & T's complaint repeatedly states that American University "intentionally discriminated" against it because it is a company owned by a person of Indian descent, see Compl. ¶¶ 25–26, 32–33, 36–37, and that American University did not treat other entities that lease its commercial properties but are not owned by a person of Indian descent in the same adverse manner, see, e.g., id. ¶¶ 24, 31, 51. But these assertions are mere "conclusions and void of any facts that support the allegations." Kungle v. State Farm, Fire & Cas. Co., 48 F. Supp. 3d 67, 77 (D.D.C. 2014); see also Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 274–75 (D.D.C. 2011) (dismissing § 1981 claims where the plaintiff made only "conclusory statements" without "factual allegations demonstrating that his race, ancestry, or ethnic characteristics were the reason for any mistreatment he suffered").

SS & T cannot merely allege that similarly situated leaseholders not owned by persons of Indian-descent were treated differently and then offer "nothing more in the way of specific facts or allegations associated with this claim." Richards v. Duke Univ., 480 F. Supp. 2d 222, 239 (D.D.C. 2007). For example, in L. Xia, Chinese nationals claimed that the government revoked their naturalization certificates and passports on the basis of their ethnicity in violation of § 1981. 865 F.3d at 658–59. In support of their allegation that the government acted with racial

7

discriminatory intent, plaintiffs provided the court with a chart from Wikipedia listing denaturalized former U.S. citizens and asserted that the list contains over a hundred "'similarly situated persons of other' (ie., Non-Chinese) 'original ethnicity' who were denaturalized via valid processes not equally offered to plaintiffs." Id. at 660. But the court held that the "complaint and supporting materials simply do not permit [it] to infer more than the mere possibility of misconduct" because plaintiffs' allegations "fail[ed] to identify the listed individuals' ethnicities or the process they received before being denaturalized." Id. (internal quotation marks omitted).

Similarly here, SS & T fails to identify any of the other businesses that lease property from American University or the race of the other business owners, nor does SS & T explain how those businesses were similarly situated yet treated differently. For all the Court knows, the other leaseholders that were treated differently than SS & T were not even restaurants. "A plaintiff's assertion that [it] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough." Bekkem v. Wilkie, 915 F.3d 1258, 1275 (10th Cir. 2019) (internal quotation marks omitted); see also Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1015 (8th Cir. 2013) (concluding that "[plaintiff's] conclusory assertion that she was discharged under circumstances similarly situated men were not imports legal language couched as a factual allegation and fails to raise a right to relief above the speculative level"); Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190–91 (4th Cir. 2010) (concluding that plaintiff's allegation that he "was treated differently as a result of his race than whites"—even where plaintiff identified an alleged comparator—was insufficient to sustain a Title VII claim because no factual allegations plausibly suggested the comparator was "actually similarly situated"); cf. Brown v. Sessoms, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (concluding that plaintiff sufficiently stated § 1981 claim

because she "identified a similarly-situated employee who is not in her protected class and explained why she has equivalent qualifications").

Therefore, SS & T's bald allegation that American University intended to discriminate against SS & T on the basis of race is too threadbare to state a claim for relief under 42 U.S.C. § 1981.

## CONCLUSION

For the reasons explained above, this Court will grant American University's motion to dismiss SS & T's complaint for failure to state a claim under Rule 12(b)(6). A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 11, 2020